LOURIE, Circuit Judge.
 

 World Fibers Corporation appeals from the judgment of the United States District Court for the Middle District of North Carolina holding that U.S. Patent 5,177,948 is not invalid and that it was not obtained by means of inequitable conduct. It also appeals from the court’s ruling denying entry into evidence of documents that it offered in an attempt to prove invalidity.
 
 Kolmes v. World Elastic Corp.,
 
 No. 4:93CV00719 (M.D.N.C. Sept. 18, 1995). World does not appeal the court’s added finding of infringement. Because the district court did not err in its holding concerning validity, and did not abuse its discretion on the issue of inequitable conduct and in its evidentiary ruling, we affirm.
 

 BACKGROUND
 

 The ’948 patent concerns a cut-resistant yam for use in making,
 
 inter alia,
 
 cut-resistant gloves. The prior art cut-resistant yarns typically used wire, which was undesirable because it restricted movement and was readily breakable. The ’948 invention improved upon this material by using non-metallic components. Figure 1 of the patent, reproduced below, illustrates an embodiment of the yam of the patent (10). It includes two core strands (12, 14), and two covering strands (16, 18) wrapped around the core strands in opposite directions relative to each other. One of the core strands comprises fiberglass. The other core strand and the covering strands typically comprise nylon, extended chain polyethylene, aramid, or polyester.
 

 [[Image here]]
 

 Claim 1 reads as follows.
 

 1. A non-metallic composite cut-resistant yarn for use in making strong flexible cut-resistant products comprising:
 

 (a) a non-metallic core including at least one strand of fiberglass, said at least one strand having a denier in the range of 375-1,000 and being substantially parallel to
 
 *-46
 
 and untwisted with another strand in said core;
 

 (b) a non-metalhc covering wrapped on said core, said covering including at least tow [sic, two] strands unbraided and spirally wrapped in opposite directions relative to each other around the core, said composite cut-resistant yam having a composite denier between about 2,000 and about 5,000;
 

 (e) said two strands in said covering being spirally wrapped about said core at the rate of 8-12 turns per inch;
 

 whereby said composite yarn may be formed into fabric on conventional knitting or weaving machines.
 

 Nathaniel H. Kolmes and Harold F. Plem-mons (collectively “Kolmes”) filed their first application for patent relating to this subject matter on June 13, 1989. They filed a continuation-in-part application on March 2, 1990, and a continuation application on January 15, 1992. This latter application, filed under 37 C.F.R. § 1.62 and using the same specification as the 1990 application, properly claimed the benefit of the filing date of the 1990 application under 35 U.S.C. § 120. It was accompanied by additional claims which became part of the granted patent. It eventually became the ’948 patent. In denying Kolmes’ motion for a preliminary injunction, the district court found that the continuation application, and hence the ’948 patent, was not entitled to the benefit of the filing date of the 1989 application and that finding has not been challenged on appeal. Thus, the additional claims of the patent have an effective filing date of March 2, 1990, and a critical date of March 2, 1989 for purposes of 35 U.S.C. § 102(b), if they are adequately described in the specification.
 

 Before the critical date, sample gloves made from the new yarn were sent to certain of Kolmes’ customers for testing. In particular, the district court found that these activities were documented by six “sales” records, two dated September 11,1988 and four dated February 21,1989. A typical use of the yam was in making cut-resistant gloves for use in meat-packing plants, and Kolmes thus sent the gloves out for testing in order to see whether they would work in that environment and withstand repeated laundering.
 

 Kolmes sued World for infringement. The district court conducted a bench trial, concluding that the ’948 patent was not invalid. It found that the 1990 application adequately supported the claims added in the 1992 continuation application. With respect to the on-sale and public use bars, the court found that gloves distributed before the critical date were marked “sample,” and were sent with a “sample sheet” free of charge. They were in experimental use and thus did not create a statutory bar.
 

 The court also found that the patent was not invalid on the ground of obviousness over U.S. Patent 5,119,512 (“the Dunbar patent”) and U.S. Patent 4,886,691 (“the Wincklhofer patent”), which it found to be most pertinent. The Wincklhofer patent discloses the use of wire in yarn, which the court found was different from the claimed non-metallic yarn of the ’948 patent. The court found that the inventors proved they made their invention before the filing date of the Dunbar patent, thereby removing it as prior art. The district court found that no inequitable conduct occurred in the failure of the patentees to submit to the Patent and Trademark Office (“PTO”) the Wincklhofer patent, the Dunbar patent, and evidence of pre-critical date sales activity. Finally, the district court found that World infringed the ’948 patent and awarded damages based upon a reasonable royalty of ten percent. World now appeals certain of these conclusions to this court.
 

 DISCUSSION
 

 On appeal from a bench trial, we review a district court’s decision for errors of law and clearly erroneous findings of fact. Fed. R.Civ.P. 52(a);
 
 see Interspiro USA, Inc. v. Figgie Int'l Inc.,
 
 18 F.3d 927, 930, 30 USPQ2d 1070, 1072 (Fed.Cir.1994).
 

 A.
 
 New Matter
 

 World argues, with respect to claim 1, that the 1990 application failed to disclose the
 
 *-45
 
 desirability of using a wrapping rate of 8-12 turns per inch with a two strand core, rather than with a one strand core. It asserts that this subject matter was new matter because, according to World, it was first added with the new claims when the 1992 continuation application was filed. World argues that the inventors were therefore not entitled to the 1990 filing date and the claims were therefore barred by a public use. Kolmes responds that the newly added claims did not constitute new matter and were entitled to that filing date, precluding a public use bar.
 

 The patent statute requires that the “specification shall contain a written description of the invention.” 35 U.S.C. § 112, ¶ 1 (1994). Section 132 requires that no new matter be added to the disclosure of an application. 35 U.S.C. § 132 (1994). The question raised here is whether the claims added by the preliminary amendment to the 1992 continuation application find adequate support in the 1990 application sufficient to meet the description requirement of section 112, ¶ 1.
 
 See In re Winkhaus,
 
 527 F.2d 637, 640, 188 USPQ 129, 131 (CCPA 1975) (“Claims added by amendment and drawn to an invention not so described in the specification are drawn to ‘new matter’ and prohibited by § 132.”).
 

 Whether a patent satisfies the description requirement of section 112, ¶ 1, is a question of fact, which we review for clear error on appeal from a bench trial.
 
 Ralston Purina Co. v. Far-Mar-Co, Inc.,
 
 772 F.2d 1570, 1575, 227 USPQ 177, 179 (Fed.Cir.1985). We agree with Kolmes that the specification contains a written description of the invention of claim 1. With respect to claimed element (a), the specification discloses a core having two parallel untwisted strands in Figure 1 and at col. 3, lines 9-20. It discloses a denier in the range of 375 to 1,000 for the core at col. 5, lines 48-49. With respect to element (b), the specification discloses the spirally-wrapped two strand covering in Figure 1 and at col. 3, lines 21-27, and it discloses the claimed denier range at col. 5, lines 63-65. The specification discloses several non-metallic materials for the core and covering strands at col. 3, lines 15-20 and 23-27.
 

 Element (c) requires that the covering be wrapped at a rate of 8-12 turns per inch. At col. 5, lines 38-40, the specification states that the coverings or wrappings are formed “at the rate of 4-12 turns per inch, with 8 turns per inch being preferred.” All the claimed limitations including the 8-12 turns per inch are thus well supported by the specification. Although the text of the specification only discusses the claimed wrapping rate with reference to a figure showing a one strand core, the specification discloses a two strand core with a two strand covering. World has not shown that the specification as a whole would have failed to convey to one skilled in the art the use of the claimed wrapping rate with a two strand core.
 
 See In re Alton,
 
 76 F.3d 1168, 1172, 37 USPQ2d 1578, 1581 (Fed.Cir.1996) (stating that in order to satisfy the written description requirement an applicant must convey as of the filing date that he or she was in possession of the invention). Claims to subject matter disclosed in the specification are not new matter. Accordingly, the district court did not clearly err in finding that the claims were supported by the 1990 application, thus satisfying the description requirement of section 112, ¶ 1.
 

 B.
 
 The On-Sale and Public Use Bars
 

 World argues that samples of gloves made from the claimed yarn were given away and sold before the critical date in violation of the public use and on-sale bars. It insists that the samples were not in experimental use because they were not covered by confidentiality agreements, and no progress reports were kept concerning the performance of the gloves in the alleged tests. Kolmes responds that the district court properly found that the gloves in question were given away for experimental purposes. It argues that its initial tests were not satisfactory because the glass fibers being used broke and caused irritation and that, accordingly, further outside testing was required to ensure that the
 
 *-44
 
 gloves could withstand normal use in a meatpacking plant. It argues that the testing satisfied the criteria for experimental use; in particular, it asserts that the gloves were provided to customers in relatively small numbers to Iowa Beef and other customers under conditions of confidentiality, and that reports were requested from them.
 

 Application of the on-sale bar under section 102 is a question of law based upon underlying issues of fact.
 
 See KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,
 
 997 F.2d 1444, 1451, 27 USPQ2d 1297, 1303 (Fed.Cir.1993). “Whether or not an invention was on-sale or in public use within the meaning of section 102(b) is a question of law that this court reviews de novo; however, factual findings underlying the trial court’s conclusion are subject to the clearly erroneous standard of review.”
 
 Manville Sales Corp. v. Paramount Sys., Inc.,
 
 917 F.2d 544, 549, 16 USPQ2d 1587, 1591 (Fed.Cir.1990). A determination that an invention was on sale within the meaning of section 102(b) requires that “the claimed invention asserted to be on sale was operable, the complete invention claimed was embodied in dr obvious in view of the device offered for sale, and the sale or offer was primarily for profit rather than for experimental purposes.”
 
 KeyStone,
 
 997 F.2d at 1451, 27 USPQ2d at 1303. In
 
 UMC,
 
 we stated that “[a]ll of the circumstances surrounding the sale or offer to sell, including the stage of development of the invention and the nature of the invention, must, be considered and weighed.”
 
 UMC Elecs. Co. v. United States,
 
 816 F.2d 647, 656, 2 USPQ2d 1465, 1471-72 (Fed.Cir.1987).
 

 We agree with Kolmes that the relevant factual findings by the district court are not clearly erroneous and that they support a conclusion that the sample gloves distributed before the critical date were in experimental use. An inherent feature of Kolmes’ invention was durability, the ability to withstand use in an environment such as a meatpacking plant with repeated laundering. That feature is evident from the preamble of claim 1, which states that the yarn is “for use in making strong flexible cut-resistant products.” Testing was hence required in such an environment in order to ensure that the invention would work for its intended purpose.
 
 See Manville,
 
 917 F.2d at 550, 16 USPQ2d at 1592 (stating that the invention, an iris arm device for a light pole used at rest stops, was “specifically designed to withstand year around weather” and that, accordingly: “Prior to its testing in the winter environment, there really was no basis for confidence by the inventor that the invention would perform as intended, and hence no proven invention to disclose.”);
 
 Gould Inc. v. United States,
 
 217 Ct.Cl. 167, 579 F.2d 571, 583, 198 USPQ 156, 167 (1978) (stating that experimental use includes “tests needed to convince [the inventor] that the invention is capable of performing its intended purpose in its intended environment”).
 

 Furthermore, the district court found a lack of commercialization in the limited distribution of the gloves, stating that “[o]nly a few gloves were sent; the gloves were marked ‘sample;’ sent with a sample sheet, and free of charge.” The court noted that six Weber Sales Inquiry records documented the experimental program, stating that: “Five records are marked sample, and each record details a variation of a Spectra®/fiber glass yarn. Each record documents a different product, and the variations indicate that the yam was in an experimental stage.” The samples were also subjected to destmetive testing, which is evidence that the testing was experimental. World has not shown that these fact findings are clearly erroneous. The variations in the yarn composition coupled with the other facts make clear that the patentees were experimenting with the yarn; they were attempting to determine if the yarn sufficed to make strong, flexible cut-resistant products, like gloves, and to determine the effectiveness of the variations in the yarn. Accordingly, the district court did not err in holding that the ’948 patent was not invalid on the ground of the on-sale bar.
 

 World conceded at the hearing that its public use argument assumed that Kolmes was not entitled to the benefit of the 1990
 
 *-43
 
 filing date. Because, as explained above, we conclude that Kolmes was entitled to the benefit of that filing date, we need not address World’s argument concerning public use. Accordingly, the district court did not err in holding that the ’948 patent was not invalid on the ground of the public use bar.
 

 C.
 
 Obviousness
 

 World argues that the invention would have been obvious at the time it was made based upon the disclosure of the Dunbar patent. In particular, it argues that the Dunbar patent discloses the invention except for the limitation that the covering strands be wrapped at a rate of 8-12 turns per inch, which is a matter of routine design choice. Kolmes responds that the Dunbar patent is not effective prior art and, even if it were, it fails to suggest adjusting the turns to 8-12 per inch.
 

 A determination of obviousness under 35 U.S.C. § 103 is a legal conclusion involving factual inquiries.
 
 Uniroyal, Inc. v. Rudkin-Wiley Corp.,
 
 837 F.2d 1044, 1050, 5 USPQ2d 1434, 1438 (Fed.Cir.1988). The ultimate conclusion concerning obviousness, as a question of law, is reviewed
 
 de novo;
 
 the findings concerning the underlying factual inquiries are reviewed for clear error on appeal from a bench trial.
 
 See id.
 
 We agree with Kolmes that the district court did not err in determining that the Dunbar patent is not prior art to Kolmes’ invention. As noted by the district court, the PTO determined diming a reexamination of the ’948 patent that Kolmes had invented the patented yarn prior to the filing date of the Dunbar patent. World has shown no error in this conclusion.
 

 World also argues that a prior patent of the same inventors, U.S. Patent 4,777,789, disclosed a rate of 2-24 turns per inch, which encompasses the claimed range. World apparently argues that one skilled in the art would have known to modify that disclosed wrapping rate to that claimed in the ’948 patent. Kolmes responds that World showed that there was no motivation to modify the invention disclosed in the ’789 patent. We agree. The ’789 patent discloses the use of wire in addition to non-metallie fibers, and World has shown no suggestion or motivation to modify the teaching of the ’789 patent with Regard to non-metallie fibers. Hence, it failed to prove that the invention would have been obvious in light of the ’789 patent.
 
 See ACS Hosp. Sys., Inc. v. Montefiore Hosp.,
 
 732 F.2d 1572, 1577, 221 USPQ 929, 933 (Fed.Cir.1984) (“Obviousness cannot be established by combining the teachings of the prior art to produce the claimed invention, absent some teaching or suggestion supporting the combination.”). Accordingly, the district court did not err in holding that the ’948 patent is not invalid on the ground of obviousness.
 

 D.
 
 Inequitable Conduct
 

 World argues that the inventors intentionally withheld material prior art, in particular, the Dunbar patent, evidence of alleged prior invention by employees of Allied-Signal, and evidence of Kolmes’ pre-eritical date sales activity. Kolmes responds that there was no showing of an intent to deceive the PTO or of materiality of the evidence in question.
 

 A determination of inequitable conduct is committed to a district court’s discretion. Accordingly, we review the court’s judgment for an abuse of discretion.
 
 Kingsdown Med. Consultants, Ltd. v. Hollister Inc.,
 
 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988). To overturn a discretionary ruling of a district court, “the appellant must establish that the ruling is based on clearly erroneous findings of fact or on a misapplication or misinterpretation of applicable law, or evidences a clear error of judgment on the part of the district court.”
 
 Molins PLC v. Textron, Inc.,
 
 48 F.3d 1172, 1178, 33 USPQ2d 1823, 1827 (Fed.Cir.1995).
 

 Inequitable conduct consists of an “affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive.”
 
 Id.,
 
 
 *-42
 
 48 F.3d 1172, 33 USPQ2d at 1826. One alleging inequitable conduct must prove the threshold elements of materiality and intent by clear and convincing evidence.
 
 Id.,
 
 48 F.3d 1172, 33 USPQ2d at 1826-27. The district court must then weigh any threshold findings of materiality and intent in light of all the circumstances to determine whether they warrant a conclusion that inequitable conduct occurred.
 
 Id.
 

 We agree with Kolmes that the district court did not abuse its discretion in finding a lack of inequitable conduct. Specifically, there was no evidence of an intent to deceive the PTO. With respect to the Dunbar patent, the evidence showed that Plemmons’ office received a copy of that patent approximately one month before the ’948 patent issued. However, there was no evidence that he personally saw it or had personal knowledge of it. This lack of evidence is inconsistent with an intent to mislead the PTO. The district court also found that there was no evidence of an intent to deceive the PTO through the failure to disclose information concerning the alleged “sales” activities in question and that Kolmes had a good faith belief that his patent was valid. Likewise, with respect to the information concerning alleged prior invention by others, there is no evidence of an intent to deceive the PTO. We do not find clear error in any of these findings. Accordingly, the district court did not abuse its discretion in holding that the ’948 patent was not obtained by means of inequitable conduct.
 

 E.
 
 Evidentiary Ruling
 

 World argues that it was entitled to have introduced into evidence internal invention disclosure documents of Allied-Signal, Inc., which it alleges would invalidate the ’948 patent on the ground of prior invention under 35 U.S.C. § 102(g). It argues that Kolmes would not have been prejudiced by the alleged surprise production of the documents only a few days before trial, because with reasonable diligence he should have discovered the documents himself. Kolmes responds that the Allied-Signal documents were properly excluded; they were hearsay and were not within the business records exception to the hearsay exclusion.
 

 We review evidentiary rulings under an abuse of discretion standard.
 
 Kearns v. Chrysler Corp.,
 
 32 F.3d 1541, 1547, 31 USPQ2d 1746, 1750 (Fed.Cir.1994),
 
 cert. denied,
 
 — U.S. —, 115 S.Ct. 1392, 131 L.Ed.2d 244 (1995). In order for World to obtain a new trial, it must show an abuse of discretion by the district court in excluding the challenged evidence and that such ruling prejudiced its substantial rights and was thus not harmless error.
 
 See
 
 28 U.S.C. § 2111 (1994);
 
 Kearns,
 
 32 F.3d at 1547, 31 USPQ2d at 1750;
 
 DMI, Inc. v. Deere & Co.,
 
 802 F.2d 421, 428, 231 USPQ 276, 280-81 (Fed.Cir.1986).
 

 We agree with Kolmes that the district court did not abuse its discretion in excluding the documents. The district court found that the documents were hearsay and not properly authenticated to be admitted under the business records exception.
 
 See
 
 Fed.R.Evid. 802, 803(6) (allowing the admission of records of regularly conducted activity through the testimony of a custodian or other qualified witness). They were authenticated only by affidavit, and the court found that Kolmes had no opportunity to cross-examine the affiant. Without the opportunity for cross-examination, Kolmes was unable to fully challenge the admissibility of the documents by attempting to show that the requirements of the business records exception had not been met.
 

 World also attempted to authenticate the documents by the testimony of Paul Weber, who was previously a consultant for Allied-Signal, and it argues that the documents were admissible through his testimony. Kolmes responds that Weber was not a “custodian or other qualified witness” because he did not know when or how the documents were prepared. We agree with Kolmes that World failed to establish that Weber was a custodian or other qualified
 
 *-41
 
 witness under the business records exception. Weber testified that he had seen the documents while attending a meeting at Allied-Signal However, he failed to testify concerning the record-keeping process related to them, a requirement for admissibility of documents under the business records exception.
 
 See
 
 Fed.R.Evid. 808(6). Thus, World failed to establish that Weber was a custodian or other qualified witness,
 
 see id.,
 
 and the district court thus did not abuse its discretion in excluding the documents.
 

 F.
 
 Attorney Fees and Frivolous Appeal
 

 World requests damages under 35 U.S.C. § 284 as compensation for what it alleges are fraudulent acts of Kolmes. However, section 284 authorizes a court to award damages for infringement of a patent; World is the accused infringer and has not in this case prevailed in an infringement claim. Accordingly, World is not entitled to damages under section 284. World also requests an award of attorney fees under 35 U.S.C. § 285 (“The court in exceptional eases may award reasonable attorney fees to the prevailing party.”). Because World is not the prevailing party, it is not entitled to attorney fees.
 

 Kolmes requests an award of damages under Fed. R.App. P. 38, arguing that World’s appeal is baseless. Rule 38 authorizes a court of appeals to award damages for a frivolous appeal, and we have held that appeals may be frivolous as filed or as argued.
 
 State Indus., Inc. v. Mor-Flo Indus., Inc.,
 
 948 F.2d 1573, 1578, 20 USPQ2d 1738, 1742 (Fed.Cir.1991). An appeal is frivolous as filed if “no basis for reversal in law or fact can be or is even arguably shown.”
 
 Connell v. Sears, Roebuck & Co.,
 
 722 F.2d 1542, 1554, 220 USPQ 193, 203 (Fed.Cir.1983). Kolmes’ request first fails for lack of a separate motion.
 
 See
 
 Fed. R.App. P. 38. On the merits, although World had many hurdles to overcome in its attempt to obtain a reversal, its appeal was not baseless and therefore was not frivolous as filed. Kolmes also argues that World’s brief is misleading. We have carefully considered World’s briefs and conclude that they do not evidence any sanctionable conduct.
 
 See State Indus.,
 
 948 F.2d at 1579 n. 4, 20 USPQ2d at 1743 n. 4 (listing examples of sanctionable conduct). Because we conclude that World’s appeal was not frivolous as filed or as argued (even considering its unfounded claims for attorney fees or damages under sections 284 and 285), Kolmes is not entitled to damages under Rule 38.
 

 We have considered the parties’ other arguments and conclude that they are either unpersuasive or unnecessary for resolution of this appeal.
 

 CONCLUSION
 

 The district court did not err in holding that the ’948 patent is not invalid. It did not abuse its discretion in holding that the patent was not obtained by means of inequitable conduct and in denying entry into evidence of the Allied-Signal documents. World is not entitled to damages under section 284 or attorney fees under section 285. Because World’s appeal was not frivolous, Kolmes is not entitled to damages under Fed. R.App. P. 38.
 

 AFFIRMED.