# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

BHUSHAN DESAI                          )
                                       )
            Appellant,                 )
                                       )
    v.                                 )        ID No. 1706004090
                                       )
THE STATE OF DELAWARE                  )
                                       )
            Appellee.                  )

Submitted: September 11, 2018
Decided: November 16, 2018

*Upon Appeal from the Court of Common Pleas –*
**AFFIRMED**.

# OPINION

Michael W. Modica, Esquire, Attorney for Appellant.
Jillian L. Schroeder, Esquire, Attorney for Appellee.

**STREETT, J.**

## Introduction

Bhushan Desai ("Defendant", "Appellant") contends that the Court of Common Pleas (Trial Court) abused its discretion and/or committed legal error by admitting records from the Intoxilyzer calibration logbook through Delaware State Trooper August Zickgraf (Trooper Zickgraf) under D.R.E. 803(6),[1] the business records exception to the hearsay rule. Defendant claims that Trooper Zickgraf did not have a basis of knowledge to testify that the records were made "at or near the time" of the performance of the Intoxilyzer calibration tests.[2] Defendant argues that, as such, Trooper Zickgraf was not a qualified witness and the logbook records were

---

[1] Rule 803. Exceptions to the Rule Against Hearsay Regardless of Whether the Declarant is Available as a Witness.

The following are not excluded by the rule against hearsay regardless of whether the declarant is available as a witness:

. . .

(6) *Records of a Regularly Conducted Activity.* A memorandum, report, record or data compilation, in any form of an act, event, condition, opinion, or diagnosis if:
(A) the record was made at or near the time by -- or from information transmitted by -- someone with knowledge;
(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
(C) making the memorandum, report, record or data compilation was a regular practice of that activity;
(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

[2] Appellant's Opening Brief, at 7.

2

inadmissible because the State failed to show that the records were made "at or near the time" of the event as required by D.R.E. 803(6).[3]

The State ("Appellee") responds that Trooper Zickgraf was a qualified witness under D.R.E. 803(6) and that the Trial Court did not abuse its discretion or commit legal error when it admitted the logbook records into evidence.[4]

For the reasons set forth below, the decision of the Trial Court is affirmed.

## Factual and Procedural History

On June 7, 2017, Defendant was arrested for driving a vehicle while under the influence of alcohol (DUI) in violation of 21 *Del. C.* § 4177, failing to have his headlights on when required by law in violation of 21 *Del. C.* § 4331(a), and an illegal U-turn in violation of 21 *Del. C.* § 4152(a)(1).

On August 23, 2017, Defendant filed a Motion to Suppress, arguing that the officers lacked reasonable suspicion to stop Defendant's vehicle and probable cause to take Defendant into custody for DUI. On December 13, 2017, the Court of Common Pleas held a hearing on Defendant's Motion to Suppress.

Sergeant Mark Papili (Sergeant Papili) of the Delaware State Police testified at the suppression hearing that on June 7, 2017, at approximately 2:00 a.m., he observed Defendant's vehicle travelling westbound on Kirkwood Highway at the

---

[3] *Id.*

[4] State's Answering Brief, at 3.

3

intersection of Albertson Boulevard. Defendant's vehicle's headlights were not on and Defendant made an illegal U-turn in front of Sergeant Papili. Sergeant Papili turned on his emergency lights and pulled Defendant over.

Sergeant Papili approached Defendant's vehicle on the passenger side and spoke to him through the open window. Defendant was the driver and sole occupant of the vehicle. Sergeant Papili testified that he detected an odor of alcohol coming from inside the vehicle and from Defendant's breath. He also observed that Defendant's eyes were bloodshot and that there was an open 12-ounce can of Miller Lite beer in the center console of the vehicle. Sergeant Papili described Defendant's speech as slightly slurred. Shortly thereafter, Trooper Zickgraf arrived at the scene. Trooper Zickgraf assumed control of the DUI investigation and Sergeant Papili left the scene.

Trooper Zickgraf testified that he also smelled a strong odor of alcohol coming from the inside of the vehicle and from Defendant's breath.[5] Defendant told Trooper Zickgraf that he had roughly 2 beers approximately 30 minutes prior. Trooper Zickgraf observed the open beer can in Defendant's vehicle and described Defendant as having bloodshot and glassy eyes and slightly slurred speech. Trooper Zickgraf

---

[5] Trooper Zickgraf testified that he "believe[d]" that he approached the driver's side of the vehicle when he made initial contact with Defendant. Suppression Hearing, at 29-30 (Dec. 13, 2017).

4

told Defendant to exit the vehicle and noted that Defendant was unsteady on his feet after exiting.

Trooper Zickgraf testified that from the totality of the situation he was able to form an opinion that Defendant was intoxicated and he requested that Defendant perform field sobriety tests. Defendant was administered the HGN, Walk and Turn, and Balance tests. Based upon the information he received from Sergeant Papili and the results of the field sobriety tests, Trooper Zickgraf placed Defendant under arrest for the above offenses.[6] Trooper Zickgraf then transported Defendant to the police station where Trooper Zickgraf administered the Intoxilyzer breath test on Defendant.[7]

As a prerequisite to admitting Defendant's Intoxilyzer test results, the State moved to admit the Intoxilyzer calibration logbook records through Trooper Zickgraf's testimony to establish that the Intoxilyzer was working properly when it was administered on Defendant. Trooper Zickgraf testified that he was trained on the Intoxilyzer while he was at the academy, identified the Intoxilyzer logbook,

---

[6] There was a preliminary breath test administered but it was not admitted into evidence because it was not administered in 15 minutes.

[7] Trooper Zickgraf testified that he began observing Defendant at 0301 in the Intoxilyzer Room and that he put the card into the Intoxilyzer at 0325. He testified that Defendant could not have consumed any alcohol from the time the observation period began and the time the Intoxilyzer test was submitted. Trooper Zickgraf also testified that the Intoxilyzer test was administered "[a]bout an hour" after Defendant had been in physical control of his vehicle. Suppression Hearing, at 99-100.

5

stated that it is kept in the Traffic Lieutenant's office, that anyone in the building has access to the logbook, and that the entries in the logbook were made by Cynthia McCarthy who is the State Chemist ("State Chemist"). He testified that he recognized the State Chemist's signature because "[s]he came down to the Academy when [he] was going through the training, and [the State Chemist] signed the front board with her signature" and that "[t]he same signature as when she signed the board at the Academy is to [sic] on the bottom of the [logbook entry] page."[8]

Trooper Zickgraf also testified that the State Chemist calibrates the Intoxilyzers, that the logbook was kept for the specific Intoxylzer used on Defendant, that the logbook is kept in the ordinary course of business, and that the purpose of the logbook is "to keep the results of when [the State Chemist] calibrates the Intoxilyzers."[9] When asked by the State: "To the best of your knowledge were the entries in that Log Book made at or near the time that the test was performed by [the State Chemist]", Trooper Zickgraf answered: "Yes, from my knowledge."[10] The State then asked: "Is there any reason that you would believe the Log Book is unreliable?" Trooper Zickgraf responded: "No."[11]

---

[8] Suppression Hearing, at 88.

[9] *Id.*

[10] *Id.* at 89.

[11] *Id.*

Trooper Zickgraf testified that the record in the logbook prior to the arrest was dated May 22, 2017 at the top and that the State Chemist signed and dated the bottom of the record (May 22, 2017) and wrote down the time (1315 hours). [12]  He then testified that the next log record was dated at the top for June 26, 2017 and that the bottom of the record was the same as the previous record except for the different date and time.[13]  The State asked: "And does those logs indicate that the Intoxilyzer was working properly on the dates before and after the Defendant's arrest [on June 7, 2017]?", to which Trooper Zickgraf answered: "Yes, ma'am."[14]

Defendant's counsel then cross-examined Trooper Zickgraf.  The exchange went as follows:

> Q.  Officer, what is your basis of knowledge to testify that Cynthia McCarthy prepares that record at or near the time that she actually performs the test?
>
> A.  Well, I wasn't there obviously.  So all I can verify that she signed it.  I can verify that's her signature and that she tested it.  And I can verify that she did date it and – under her signature and she dated and time – put a time down.
>
> Q.  So it's based upon what she wrote, but you don't have any independent personal knowledge from observing how she performs the test that those documents were made at or near the time that she performed the test?

---

[12] *Id.* 89-90

[13] *Id.* at 90.

[14] *Id.*

7

A. When I was at the Academy she did perform a test for the class. But again I wasn't at this exact date and time when she performed it.[15]

Q. When she was performing the test for the class, that was just for your knowledge, right? That wasn't for what her normal – you know, you've never observed her normal routine?

A. No, I have not.[16]

Following this cross-examination, Defendant's counsel objected to the admission of the logbook. He told the court, "I don't think there's a basis to establish that it was made at or near the time of the testing."[17] Defendant's counsel argued that Trooper Zickgraf is required to provide a basis for his knowledge that the records were made at or near the time of the calibration tests. Defendant's counsel asserted that establishing such a basis for knowledge is usually accomplished

---

[15] Although one interpretation of Trooper Zickgraf's answer could be that he was not present when the test was performed at the academy, it appears that the Trial Court, the State, and Defendant agree that Trooper Zickgraf testified that he observed the performance of the test that took place at the academy but that he did not witness the calibration tests (on May 22 and June 26) conducted on the Intoxilyzer that was used on Defendant. The Trial Court, in its Opinion, stated: "Zickgraf testified he believes Ms. McCarthy signs her name and dates the test document sequentially since he witnessed Ms. McCarthy calibrate the Intoxilyzer machines while he was in the academy." *State v. Desai*, 2018 WL 2324300, at *2 (Del. Com. Pl. May 22, 2018). Defendant conceded in his Opening Brief that Trooper Zickgraf "observed [the State Chemist] perform the testing on one occasion during training." Appellant's Opening Brief at 5, 12. So to, the State asserts that "Trooper Zickgraf witnessed Ms. McCarthy perform a calibration check while at the police academy." State's Answering Brief, at 14.

[16] *Id.* at 91.

[17] *Id.* at 92.

8

through observing the State Chemist's routine in the past. The Trial Court admitted the logbook subject to briefing by both parties on the issue.

This matter then proceeded to trial on the same day. The State moved to admit the results of the Intoxilyzer breath test that Trooper Zickgraf had administered on Defendant. The Trial Court admitted the Intoxilyzer breath test results subject to its decision on the admissibility of the calibration logbook. After trial, the Trial Court took the matter under advisement to decide the issue of the admissibility of the calibration logbook records.

On January 19, 2018, Defendant filed his post-trial letter memorandum in support of his objection to the admission of the logbook records. Defendant claimed that there was an insufficient foundation for admission under D.R.E. 803(6), the Business Records Exception. On February 6, 2018, the State submitted its post-trial response in opposition and, on March 2, 2018, Defendant submitted his reply.

On May 22, 2018, the Trial Court denied Defendant's Motion to Suppress the Intoxilyzer calibration logbook records and found Defendant guilty of Driving While Under the Influence, Making an Improper U-Turn, and Failing to Have on Headlights When Required.[18] In denying Defendant's Motion to Suppress, the Court cited *McCoy v. State*[19] which held that "[e]ven though [the officer] had not witnessed

---

[18] *State v. Desai*, 2018 WL 2324300, at *5 (Del. Com. Pl. May 22, 2018).

[19] *McCoy v. State*, 2014 WL 1357317 (Del. Apr. 3, 2014).

9

a calibration check by a chemist, he had sufficient knowledge of the procedure by which the intoxilyzer records were created" and as such, he was a qualified witness.[20] The Court reasoned that Trooper Zickgraf "testified to the same elements as in *McCoy*."[21] The Court explained that Trooper Zickgraf testified that he recognized the State Chemist's handwriting, that the duty of the State Chemist is to calibrate the Intoxilyzer, that once the State Chemist verifies the Intoxilyzer is working properly she records the results on each form, and that afterwards she writes the date and time that the calibration tests were made and signs the form.

Defendant appeals the Trial Court's denial of his Motion to Suppress.

## Parties' Contentions

On September 11, 2018, Defendant filed his Opening Brief with this Court. Defendant contends that Trooper Zickgraf was not familiar with whether the calibration records in the logbook were made by the State Chemist "at or near the time" she conducted the calibration tests.[22] Defendant claims that Trooper Zickgraf "confessed to a lack of knowledge about when and how [the State Chemist] actually prepared the certification record even though he was familiar with how [the State

---

[20] *Id.* at 2; cited in *State v. Desai*, at *5.

[21] *State v. Desai*, at *5.

[22] Appellant's Opening Brief, at 7.

10

Chemist] conducted the calibration testing."[23] Defendant argues that because of Trooper Zickgraf's "lack of knowledge of [the State Chemist's] record making process," he is not a qualified witness under D.R.E. 803(6).[24]

Defendant writes that although Trooper Zickgraf testified to familiarity with the State Chemist's signature and testing procedure and that "from [his] knowledge" the entries in the logbook were made at or near the time of the calibration testing, he did not provide any basis for his "knowledge."[25] Defendant further contends that Trooper Zickgraf appears to base his conclusion (that the calibration records were made near the time that the Intoxilyzer was tested) exclusively upon the contents of the records themselves "as opposed to an understanding" of how the record entries are completed.[26] Defendant argues that a qualified witness is required to establish familiarity with the process for not only how the record is kept but also how it is created. Defendant asserts that Trooper Zickgraf "was required to establish his personal knowledge that [the State Chemist] completed [the Intoxilyzer logbook entry] at or near the time of the event."[27]

---

[23] *Id.*

[24] *Id.*

[25] *Id.* at 12.

[26] *Id.* at 13.

[27] *Id.* at 18 (internal quotations omitted).

11

Defendant claims that the Trial Court erred in admitting the Intoxylizer calibration logs because Trooper Zickgraf was not a qualified witness and the results of Defendant's Intoxilyzer breath test were erroneously admitted. As such, Defendant contends that the DUI conviction based upon the Intoxilyzer breath test results must be reversed.

Defendant cites several cases to support his argument. Defendant writes that a Georgia Court of Appeals case, *Mullinax v. State*,[28] "is directly on point with the issue in this case" and "mirrors Defendant's position in this case..."[29] In his brief, Defendant explains that the court in *Mullinax* held that "the state trooper did not establish the adequate foundation for admission of the testing certificates for the Intoxilyzer 5000 under the business records exception to the hearsay rule because *he did not know if the documents were made contemporaneously with the testing,* even though he was familiar with other aspects of how the records were maintained."[30] Defendant asserts that the *Mullinax* holding "should control the issue."[31]

---

[28] *Mullinax v. State*, 231 Ga.App. 534 (COA Ga. Mar. 24, 1998).

[29] Appellant's Opening Brief, at 10.

[30] *Id.* at 9-10 (bold and italics in original) (internal quotations omitted).

[31] *Id.* at 10.

Defendant also cites *United States v. Ordonez* and *Kolmes v. World Fibers Corp.*[32] Defendant states that, in *Ordonez*, the 9th Circuit "determined that the ledgers did not qualify as business records under 803(6) because the prosecution did not produce a custodian of the records or establish the foundational requirements for admission under that rule, including the failure to establish that the entries were made at or near the time of the transactions."[33] Defendant writes that, in *Kolmes*, the United States Court of Appeals for the Federal District held that "documents offered by an alleged patent infringer did not satisfy the business records exception to the hearsay rule because its witness did not know when and how the documents were prepared."[34]

On October 1, 2018, the State submitted its Answering Brief. The State contends that the Trial Court properly concluded that Trooper Zickgraf was a qualified witness. The State argues that Trooper Zickgraf is familiar with the State Chemist's record-keeping process for Intoxylizer calibration logs; he testified that he recognized the State Chemist's handwriting and signature; he knew that the State Chemist is responsible for conducting periodic checks of the calibration of the Intoxylizer; he knew that the State Chemist verifies that the Intoxylizers are working

---

[32] *U.S. v. Ordonez*, 737 F.2d 793 (9th Cir. 1984); *Kolmes v. World Fibers Corporation*, 107 F.3d 1534, 1542 (Fed. App. 1997).

[33] Appellant's Opening Brief, at 10 (internal quotations omitted).

[34] *Id.* at 11 (internal quotations omitted).

properly; and that the State Chemist then fills out the form with the results, signs, dates and writes the time the tests were conducted, and then places the form in the Intoxylizer logbook that is located in the Traffic Lieutenant's office. The State also argues that Trooper Zickgraf indicated that he is familiar with the logbook. Furthermore, the State points out that Trooper Zickgraf witnessed the State Chemist perform a calibration test during his training at the police academy. Therefore, the State concludes that Trooper Zickgraf's testimony "demonstrates the requisite adequate familiarity with the Intoxylizer calibration and record-keeping process."[35]

The State also points out that Trooper Zickgraf testified that the calibration logbook recorded the calibration test result for the Intoxylizer used on Defendant, there was no reason to believe that the entries in the logbook were unreliable, the dates in the logbook indicated that the Intoxylizer was working properly before and after it was used in the present case, the State Chemist signed, dated and provided a time on the log sheets, and that the calibration log sheets were signed within minutes of the times listed for the calibration tests.

In addition, the State asserts that the dates and time listed on the logs "make it self-evident that the calibration sheets are signed and prepared at or near the time

---

[35] State's Answering Brief, at 11 (internal quotations omitted).

as required by" D.R.E 803(6) and that there is no reason to question the truthfulness of the logbook records.[36]

On October 8, 2018, Defendant submitted his Reply Brief. Defendant argues that, although the State points out that Trooper Zickgraf observed the State Chemist perform the calibration *testing*, Trooper Zickgraf "did not witness the creating of the record memorializing the results of the testing."[37] Defendant contends that Trooper Zickgraf is not familiar with the process of recording the calibration results and cannot be a qualified witness for testifying that the logbook records were made at or near the time of the calibration tests because he did not witness how or when the State Chemist recorded the calibration results on these logbook forms. Defendant maintains that it was necessary for Trooper Zickgraf to have observed the process by which the State Chemist recorded the results of the calibration tests in the calibration logbook in order to establish the requisite familiarity.

### Standard of Review

Under 11 *Del. C.* § 5301(c) Defendant has a right to appeal the Trial Court's decision to this Court. Such an appeal to this Court shall be reviewed on the record and shall not be tried de novo.[38] This Court is to correct errors of law and to review

---

[36] *Id.* at 14 (internal quotations omitted).

[37] Appellant's Reply Brief, at 1.

[38] 11 *Del. C.* § 5301(c) - From any order, rule, decision, judgment or sentence of the Court in a criminal action, the accused shall have the right of appeal to the Superior Court in and for the

15

the factual findings of the Trial Court to determine "if they are sufficiently supported by the record and are the product of an orderly and logical deductive process."[39] Errors of law will be reviewed de novo and findings of fact are given deference and reviewed for clear error.[40] "If substantial evidence exists for a finding of fact, this Court must accept that ruling, as it must not make its own factual conclusions, weigh evidence, or make credibility determinations."[41]

## Discussion

"It is well-established in Delaware that the prerequisite to introducing the result of an intoxilyzer test into evidence is to present the certifications of the State Chemist that the intoxilyzer machine was operating accurately before and after testing the breath of the defendant on trial."[42] However, the Court has held that "[a] State Chemist is not required to personally authenticate the certification. Instead,

---

county wherein the information was filed as provided in § 28, article IV of the Constitution of the State. Such appeal to the Superior Court shall be reviewed on the record and shall not be tried de novo.

[39] *Burris v. Beneficial Delaware, INC.*, 2011 WL 2420423, at *1 (Del. Super. June 9, 2011).

[40] *Auwerda v. State*, 2017 WL 2729561, *6 (Del. Super. June 19, 2017).

[41] *Klinedinst v. CACH, LLC*, 2015 WL 3429941, at 3 (Del. Super. May 22, 2015), citing *Fiori v. State,* 2004 WL 1284205, at *1 (Del. Super. May 26, 2004).

[42] *McCoy v. State*, at *1.

such evidence can be introduced through the business records exception to the hearsay rule"[43] under D.R.E. 803(6).

D.R.E. 803(6) provides for the admission of a memorandum, report, record or data compilation, in any form of an act, event, condition, opinion, or diagnosis if:

> (A) the record was made at or near the time by -- or from information transmitted by -- someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the memorandum, report, record or data compilation was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.[44]

"Under Rule 803(6), the State [is] required to provide a proper foundation for admission of the record through the testimony of the custodian or other qualified witness"[45] who "need only have knowledge of the procedures under which the records were created."[46]

---

[43] *Id.*

[44] D.R.E. 803(6).

[45] *Bruce v. State*, 781 A.2d 544, 553 (Del. Sept. 13, 2001) (internal quotations omitted).

[46] *McCoy v. State*, *2 (internal quotations omitted).

17

In *Trawick v. State*[47] the Delaware Supreme Court outlined what a witness must do to satisfy D.R.E. 803(6). The Court stated that:

> A qualified witness, in addition to his or her familiarity with the record-keeping system, must attest to the following foundational requirements of Rule 803(6):
>
> (1) [that] the declarant in the records had knowledge to make accurate statements; (2) that the declarant recorded statements contemporaneously with the actions which were the subject of the reports; (3) that the declarant made the record in the regular course of business activity; and (4) that such records were regularly kept by the business.[48]

Thus, to determine whether the Trial Court erred in admitting the Intoxylizer logbook records, this Court must first determine whether Trooper Zickgraf was a qualified witness and then determine whether he showed that the records were made at or near the time of the calibration tests.[49]

Essentially, Defendant claims that Trooper Zickgraf did not possess the requisite familiarity with the record-keeping process because he never personally observed the process by which the State Chemist records entries into the logbook. However, *McCoy v. State* suggests that personal observation is not a requirement for

---

[47] *Trawick v. State*, 845 A.2d 505, 508-509 (Del. Apr. 7, 2004).

[48] *Id.*

[49] *See McCoy v.* State, at *2 ("In addition to meeting the requirements of a qualified witness, the State also provided sufficient evidence to satisfy the foundational requirements of Rule 803(6).").

establishing the requisite familiarity.[50] The Court held that "the witness need not personally observe the State Chemist conduct a calibration of the intoxylizer machine in order to admit the calibration log into evidence."[51] Although Defendant argues that observing the calibration test is distinguishable from observing entries into the logbook concerning the calibration results, the Delaware Supreme Court did not make a distinction. It held that "[i]n order to be a qualified witness, the witness need *only* to have knowledge of the procedure under which the records were created."[52] "[A]ll that is necessary to be a qualified witness" is for the witness to provide "testimony demonstrating his familiarity with the procedures in which the records were created."[53] There is no requirement that the witness personally observe the act of recording the results, participate in the document's creation, or "even know who recorded the information."[54]

---

[50] In his Opening Brief Defendant states: "To the extent that *McCoy* does not require that [sic] testimony of personal knowledge, then it conflicts with the well-established requirements of DRE 803(6) and is a flawed decision." Defendant appears to be referring to this Court's decision in *State v. McCoy*, 2012 WL 1415698 (Del. Super. Feb. 21, 2012). However, it was affirmed in 2014 and the Supreme Court upheld the decision to permit the logbook. *See McCoy v. State*, 89 A.3d 477 (Del. Apr. 3, 2014).

[51] *McCoy v. State*, at *2 (internal quotations omitted).

[52] *Id.* (italics added).

[53] *Id.*

[54] *State v. McCoy*, 2012 WL 1415698, *4 (Del. Super. Feb. 21, 2012).

Here, Trooper Zickgraf's testimony reflected knowledge of the procedures under which the records were created. He explained that the purpose of the Intoxilyzer logbook was "to keep the results of *when* [the State Chemist] calibrates the Intoxilyzer."[55] He stated that "once [the State Chemist] verifies that the Intox is calibrated and running correctly she then fills out the form."[56] He attested that the State Chemist provided a signature, date, and time on the calibration log sheets and that "from [his] knowledge" the State Chemist made these entries in the logbook at or near the time that the calibration tests were performed.[57] Thus, Trooper Zickgraf explained the purpose of the logbook, the sequence of events that led to the logbook entries, the nature of the entries, and the timing of the entries. Trooper Zickgraf's testimony adequately sets forth the record-keeping process for the calibration logbook records.

Additionally, Trooper Zickgraf provided a basis for his knowledge. He testified that he recognized the State Chemist's handwriting and signature; that the signature, dates, and times listed were in the State Chemist's handwriting; and that the date at the top of the page and the bottom of the page matched. When asked whether he had any personal knowledge, obtained by "observing how [the State

---

[55] Suppression Hearing, at 88 (emphasis added).

[56] *Id.* at 98.

[57] *Id.* at 88-89.

Chemist] performs the test that those documents were made at or near the time that she performed the test," Trooper Zickgraf explained that "[w]hen [he] was at the Academy [the State Chemist] did perform a test for the class."[58]

Furthermore, in Delaware there is a "well established presumption that, in the absence of evidence to the contrary, those responsible for certain services to the public will carry out their duties in a proper, careful, and prudent manner."[59] In *McConnell v. State*,[60] the Delaware Supreme Court specifically applied this presumption to State Chemists. The Court held that "[i]n the absence of evidence to the contrary, there is a presumption that the State Chemist acted carefully and in a prudent manner."[61] In the instant case, Cynthia McCarthy is a state chemist. Defendant has not offered any evidence to overcome the presumption that this State Chemist acted carefully and in a prudent manner when she made the entries on the log sheets. Therefore, when Trooper Zickgraf indicated that the signature, date, and time provided by the State Chemist on the official record formed a basis for his

---

[58] Suppression Hearing, at 91-92.

[59] *State v. McCabe*, 1995 WL 562130, at *4 (Del. Super. Aug. 14, 1995) (quoting *Judah v. State*, 234 A.2d 910, 911 (Del. Nov. 2, 1967)). *See also State v. McCoy*, 2012 WL 1415698, at *5 (Del. Super. Feb. 21, 2012), *aff'd McCoy v. State*, 89 A.3d 477 (Del. Apr. 3, 2014); *State v. Moon*, 2014 WL 12684748, at *4 (Del. Com. Pl. Jul. 9, 2014).

[60] *McConnell v. State*, 639 A.2d 74 (Del. Feb. 3, 1994).

[61] *Id.*

knowledge of when the entries were made, there was a presumption that the basis was accurate.

As a qualified witness under D.R.E. 803(6) Trooper Zickgraf was required to show that the record entries were made at or near the time of the calibration tests. The Delaware Supreme Court held that under D.R.E. 803(6) a qualified witness must "attest" that the declarant recorded statements contemporaneously with the actions which were the subject of the reports.[62]

*McCoy v. State* illustrates how a qualified witness satisfies the "foundational requirements of Rule 803(6)" concerning an Intoxilyzer calibration logbook.[63] The Court held that the qualified witness in the case satisfied the foundational requirements when he testified that he recognized the handwriting of the State Chemist on the logbook records, that the State Chemist is responsible for conducting regular, periodic checks of the calibration of the Intoxilyzers, that the State Chemist produces the logbook records contemporaneously with the calibration tests, that the calibration records are made in the ordinary course of business, and that the calibration records are kept as business records by the traffic lieutenant.

---

[62] *Trawick v. State*, 845 A.2d 505, 508-509 (Del. Apr. 7, 2004).

[63] *McCoy v. State*, *2.

Here, Trooper Zickgraf similarly testified that he recognized the handwriting of the State Chemist on the logbook records, that the State Chemist is responsible for calibrating the Intoxilyzers, that the calibration logbook is kept in the ordinary course of business, and that the calibration logbook is kept in the traffic lieutenant's office. Trooper Zickgraf also attested that the State Chemist made the entries at or near the time of the calibration tests. As such, it was not an error or abuse of discretion for the Trial Court to find that Trooper Zickgraf satisfied the foundational requirements as laid out in *McCoy v. State*.

Finally, the cases that Defendant cites in support of his claim are distinguishable from the instant case. In *Mullinax*, which Defendant argues is controlling, the trooper "testified that he did not know if the documents were made contemporaneously with the testing."[64] In the instant case, Trooper Zickgraf answered in the affirmative when asked if the documents were made at or near the time the test was performed.[65] Nowhere in the transcripts does Trooper Zickgraf state that he did not know if the documents were made contemporaneously with the testing.

---

[64] *Mullinax v. State*, 231 Ga.App. 534 (COA Ga. Mar. 24, 1998).

[65] Suppression Hearing, at 89.

So too, *United States v. Ordonez* does not support Defendant's claim.[66]  In *Ordonez*, the 9th Circuit held in 1984 that the Federal Rule was not satisfied because:

> The government did not produce the custodian of the records as a witness. No evidence was offered by any person that the records were kept by persons having personal knowledge of the facts recorded or that the entries were made at or near the time of the transaction. No evidence was presented to demonstrate that the persons who made the entries were truthful and had a clear recollection of the facts. The entries were made by many persons, some of them unidentified.  The expert's opinion that these entries were business records was not supported by the foundational evidence required by Fed.R.Evid. 803(6).

Here, Trooper Zickgraf attested that the State Chemist made the records, that the record was made at or near the time of the tests, and there was no question about who made the records.  Furthermore, in *Kolmes v. World Fibers Corp.*[67], a 1997 case, the witness "failed to testify concerning the record-keeping process related" to the records.  Trooper Zickgraf described the record-keeping process.  While "officers in other cases may have been *better* qualified witnesses because of their experience," Trooper Zickgraf's testimony met the "minimum requirements necessary" to be qualified as a witness because he had knowledge of the system.[68] Moreover, a qualified witness is to be construed broadly.[69]

---

[66] *U.S. v. Ordonez*, 737 F.2d 793, 805 (9th Cir. 1984).

[67] *Kolmes v. World Fibers Corporation*, 107 F.3d 1534, 1543 (Fed. App. 1997).

[68] *State v. McCoy*, at *4 (2012).

[69] *Id.* at *5 (citing *U.S. v. Console*, 13 F.3d 641, 657 (3rd. Cir. 1993)).

The Trial Court did not commit legal error or abuse its discretion in admitting the Intoxilzyer logbook and subsequently admitting the results of Defendant's Intoxilyzer breath test. The law does not require that a qualified witness personally observe the State Chemist's routine in recording the calibration test results, there was no indication of untrustworthiness, and there was substantial evidence for the Trial Court to find that the calibration logbook records were made at or near the time of the calibration tests.

## Conclusion

Accordingly, for the foregoing reasons, the decision of the Court of Common Pleas is **AFFIRMED**.

**IT IS SO ORDERED**.

_____
Diane Clarke Streett, Judge

Original to Prothonotary

cc:  Jillian L. Schroeder, Esquire, Deputy Attorney General
     Michael W. Modica, Esquire

25